IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PATRICIA MCLAMB    :

          :

 v.       : Civil Action No. DKC 23-3365

          :

CITY OF MOUNT RAINIER, *et al.*

          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case arising from a building permit dispute is a motion to dismiss, or in the alternative, for summary judgment, filed by Defendants City of Mount Rainier (the "City"), Alma Ferrufino ("Ms. Ferrufino"), and Ukkundo'Oohwaka ("Mr. Ukkundo'Oohwaka") (collectively, "City Defendants"). (ECF No. 13).[1] The issues are briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

## I. Background

### A. Factual Background[2]

On September 27, 2018, Patricia McLamb ("Plaintiff") purchased the property located at 3716 37th Street, Mount Rainier,

---

[1] Other defendants, Prince George's County (the "County") and its employee, filed an answer and the claims against them are not at issue in this motion.

[2] The following facts are set forth in the complaint and construed in the light most favorable to Plaintiff.

Maryland 20712 (the "Property").   (ECF No. 1 ¶ 12) [hereinafter "Compl."].   Plaintiff sought to remodel the Property and hired Anthony Frazier ("Mr. Frazier"), an architect, to prepare a site plan (the "Site Plan") for submission to the Prince George's County Department of Permitting, Inspections, and Enforcement ("DPIE"). (ECF No. 1-2).   From 2019 to 2021, DPIE issued several permits to Plaintiff to remodel the Property based on the Site Plan.   (ECF No. 1-3).

The Mount Rainier, Maryland Code of Ordinances (the "City Code") provides that:

> Every construction, enlargement, permanent paving, removal or demolition within the City that requires a [County building permit] shall also require a permit from the City of Mount Rainier.   All applicable lot coverage, building height, setback, stormwater management, sediment control, conservation plan, and other requirements of the County zoning and building codes and regulations must be met in order to obtain a City permit. Examples of construction that require a City building permit, whether or not a County building permit also is required, include . . . (f) Demolition of a building or structure with a footprint of one hundred fifty (150) square feet or more that is under a permanent roof, including but not limited to portions of buildings and accessory structures.

Mt. Rainier, Md., Code § 3-104 (A) (2024).   The County permit is a prerequisite for the City permit because applicants for a City permit are also required to submit to the City, among other things, "a copy of all County building or other permit(s) issued for the

work, along with copies of all plans and specifications submitted to the County as part of such permit application and approval[.]" Mt. Rainier, Md., Code § 3-104 (D)(3) (2024).

On November 2, 2021, after Plaintiff submitted the requisite County permits and the Site Plan, the City issued a building permit to Plaintiff authorizing a "40x8x29 second story addition" at the Property "in accordance with the approved drawings and the Prince George's County Permit."  (ECF No. 1-4).  On January 11, 2022, Plaintiff began demolition work at the Property "in accordance with the issued permits and approved Site Plan."  (Compl. ¶ 18).

On January 14, 2022, Ms. Ferrufino, Code Compliance Director of the City Code Compliance Department, and Mr. Ukkundo'Oohwaka, Code Compliance Inspector of the City Code Compliance Department, visited the Property and ordered Plaintiff to "immediately cease-and-desist all further work on the Property." (Compl. ¶ 19).  Ms. Ferrufino and Mr. Ukkundo'Oohwaka then issued a stop work order which ordered Plaintiff to "stop working on the property," until a building permit was obtained from the County and the City.  (ECF No. 1-5).  Prior to issuing the stop work order, Ms. Ferrufino and Mr. Ukkundo'Oohwaka refused to review DPIE's permit database to confirm whether Plaintiff had the proper permits.  Upon receiving the stop work order, Plaintiff asked if "she could secure one of the two walls that remained standing following the demolition of the other two walls" as "the Site Plan indicated that three of the

3

four walls were to be demolished and that one wall would remain in place." (Compl. ¶ 22). Ms. Ferrufino and Mr. Ukkundo'Oohwaka denied Plaintiff's request and the unsecured wall fell, damaging the adjoining fence belonging to Plaintiff's neighbor.

On January 18, 2022, Mr. Ukkundo'Oohwaka issued a notice of violation warning to Plaintiff stating that Plaintiff did not have the correct building permit to perform demolition work at the Property. (ECF No.1-6).

On January 19, 2022, Darrel Terry ("Mr. Terry"), a supervisor in the Residential/Light Construction Inspection Section of the DPIE, and another DPIE inspector, visited the Property. Mr. Terry "claimed [Plaintiff] did not have the proper temporary electrical power permit for the [Property]," which the other inspector refuted upon checking DPIE's system. (Compl. ¶ 27). Mr. Terry asked the other inspector to leave, and then issued a stop work order and correction order to Plaintiff, stating that Plaintiff: (1) "Must obtain raze permit for house taken down to foundation[;] (2) Must revise permit from 2nd floor addition to permit for new single family dwelling [; and] (3) Must obtain sprinkler permit." (ECF No. 1-7).

On January 27, 2022, Mr. Frazier contacted George Holmes ("Mr. Holmes"), DPIE's Assistant Associate Director, to discuss the problems Plaintiff had with Ms. Ferrufino, Mr. Ukkundo'Oohwaka, and Mr. Terry. In turn, Mr. Holmes asked Nabeel Waseem ("Mr.

Waseem"), Chief of the Building Plan Review Division, to resolve the matter with Mr. Frazier.  Mr. Holmes stated, "the approved Site Plan authorized demolition of three walls, but that the plans would . . . need to be revised due to the collapse of the fourth wall."  (Compl. ¶ 29).

On March 23, 2022, DPIE approved the revised plans that addressed the collapsed wall but did not issue the permit to Plaintiff because Mr. Terry refused to lift the stop work order he placed on the Property.  On April 5, 2022, Mr. Frazier was informed that DPIE listed the revised permit as "Ready to Issue" in its database but refused to issue the permit because of the stop work order issued by Mr. Terry.  On June 13, 2022, Mr. Holmes told Plaintiff that he would contact Mr. Terry and request that he remove the stop work order.

On July 13, 2022, Kenneth Harrison ("Mr. Harrison"), a DPIE Inspector, contacted Plaintiff to inform her that the County intended to take her home.  Later that day, Mr. Terry called Plaintiff and told her that "Mr. Frazier was lying to her about the permitted work that had been approved by DPIE," and he advised Plaintiff to fire Mr. Frazier.  Mr. Terry then told Plaintiff the County would put a lien on her home and take it, but he and "Mr. Johnson" could "quickly resolve everything related to the . . . Property."  (Compl. ¶ 37).  Plaintiff attempted to find out who the "Mr. Johnson" referenced by Mr. Terry was until a friend

5

informed her "that 'Mr. Johnson' likely referred to male genitalia." (Compl. ¶¶ 38-9).

In August 2022, Mr. Waseem informed Plaintiff that "everything was in order and that the permit revisions were approved," but "he was unable to issue the approved permit due to the stop work order that was still in place by [Mr.] Terry." (Compl. ¶ 42).

On September 20, 2022, Mr. Ukkundo'Oohwaka issued a $1,000 citation and a notice to Plaintiff stating that she needed to obtain a vacant lot permit for the Property due to its unfinished condition. On December 1, 2022, Mr. Ukkundo'Oohwaka issued a letter to Plaintiff stating that the City intended to file a lien on the Property for $1,000 for "Section 3B-101 Noncompliance of Registering a Vacant Property." (ECF No. 1-8).

On January 11, 2023, Bellur Ravinshankar ("Mr. Ravinshankar"), informed Mr. Frazier that he would instruct Mr. Moseley to request the stop work order be immediately lifted. Behdad Kashanian, Associate Director of DPIE's inspections Division, told Mr. Ravinshankar that nothing had changed to justify removal of the stop work order. (Compl. ¶ 46).

On February 16, 2023, and March 10, 2023, Plaintiff received violation notices from Mr. Ukkundo'Oohwaka, requiring her to "[r]epair or place damaged fence" and "[c]onstruct building or raze it." (ECF No. 1-9). On March 27, 2023, DPIE also issued a

6

citation to Plaintiff for $4,000, alleging that she did not have the required permit to perform interior renovations at the Property even though Plaintiff never performed interior renovation work on the Property and had ceased all work on the property following the issuance of the stop work orders.

On May 9, 2023, Plaintiff, through counsel, sent a Notice of Representation, Evidence Preservation Request, and Notice of Local Government Tort Claims Act Claim to the City and the County. (ECF No. 1-9). On May 12, Mr. Harrison contacted Plaintiff to discuss the Property and refused to talk to Plaintiff's attorney despite requests that Mr. Harrison communicate with Plaintiff's attorney. (Compl. ¶ 50).

On May 19, 2023, Mr. Ukkundo'Oohwaka issued a criminal citation to Plaintiff for "noncompliance of constructing or raze an unsafe building." (ECF No. 1-11). On July 19, 2023, Plaintiff pleaded guilty to the City's criminal citation. (ECF No. 13-8).

On August 2, 2023, DPIE issued a citation to Plaintiff for $4,000, alleging she did not have the required permit to perform interior renovations at the Property. The issued citation had a permit number that was not associated with Plaintiff or the Property.

To date, the stop work order issued by Mr. Terry remains on the Property. (Compl. ¶ 56).

### B. Procedural Background

On December 12, 2023, Plaintiff filed a complaint against the City, the County, Ms. Ferrufino, Mr. Ukkundo'Oohwaka, and Mr. Terry. (Compl.). On January 18, 2024, the County and Mr. Terry filed an answer. (ECF No. 10). On February 12, 2024, the City, Ms. Ferrufino, and Mr. Ukkundo'Oohwaka filed a motion to dismiss, or in the alternative, for summary judgment. (ECF No. 13). Plaintiff filed a response in opposition to City Defendants' motion on February 26, 2024. (ECF No. 14). She also submitted an affidavit pursuant to Federal Rule of Civil Procedure 56(d).[3] On March 26, 2024, City Defendants filed a reply to Plaintiff's opposition. (ECF No. 17).

## II.  Standard of Review

City Defendants styled their motion as a motion to dismiss or, in the alternative, for summary judgment.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint needs only satisfy the standard of Rule 8(a)(2), which requires a "short and plain

---

[3] Plaintiff refers to Jordan D. Howlette's affidavit as a Rule 56(f) motion; however, that is the former rule. The rule is now Fed.R.Civ.P. 56(d).

statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage[.]" *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023) (quoting *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 549 (D.Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022)). "However, 'the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to

dismiss if the document is integral to the complaint and there is no dispute about the document's authenticity.'" *Faulkenberry*, 670 F.Supp.3d at 249 (quoting *Reamer*, 556 F.Supp.3d at 549). "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Faulkenberry*, 670 F.Supp.3d at 249 (quoting *Reamer*, 556 F.Supp.3d at 549) (internal quotation marks omitted).

A court may also "consider 'matters of which a court may take judicial notice.'" *Faulkenberry*, 670 F.Supp.3d at 249 (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). "[A] court may properly take judicial notice of matters of public record and other information that, under Federal Rule of Evidence 201, constitute adjudicative facts." *Faulkenberry*, 670 F.Supp.3d at 249 (quoting *Taylor v. Go-Getters, Inc.*, No. 20-cv-3624-ELH, 2022 WL 1127902, at *7 (D.Md. Apr. 15, 2022)).

The documents attached to City Defendants' motion are: (1) the DPIE Permit history report showing the McLamb Addition; (2) photos of the Property; (3) the January 14, 2022 stop work order; (4) excerpts from the City Code; (5) electronic case records of judicial proceedings; and (6) a DPIE permit history report showing Permit 8094-2023-00. (ECF Nos. 13-2 through 13-8). Both the DPIE Permit history report and the January 14, 2022 stop work order are

attached to the complaint.[4]   (*See* ECF Nos. 1-3; 1-5; 13-2; 13-4).
The DPIE Permit history report showing permit 8094-2030-00 is
incorporated by reference in the complaint and there is no dispute
regarding its authenticity, so it may be considered without
converting the motion to dismiss into one for summary judgment.
Additionally, the court may take judicial notice of the three
electronic case records offered by City Defendants as well as the
excerpts from the City Code.  (ECF Nos. 13-5 through 13-8).  The
photo of the Property, however, will not be considered by the court
as it is not integral to the complaint, a public record, or
adjudicative fact warranting judicial notice and is therefore
improper for consideration on a motion to dismiss.  (ECF No. 13-
3).[5]

## III. Analysis

Five counts are relevant to the pending motion: violation of
the Equal Protection Clause (Count I), an unconstitutional taking
of property in violation of the Fifth Amendment (Count II),
Maryland state law violations (Count III), violation of due process
under the Fourteenth Amendment (Count IV), and negligence (Count
V).  In their motion to dismiss, City Defendants argue that (1)

---

[4] The DPIE Permit history report is a condensed version of
the individual DPIE permits presented in the complaint, but the
information offered is identical.

[5] It is not necessary to review the photo submitted by City
Defendants for the court to resolve this matter.

Plaintiff has failed to plead plausible claims for Counts I, II, and IV; (2) qualified immunity bars Counts I, II, and IV; (3) Plaintiff has failed to plead plausible claims for Count III; and (4) common law public official immunity bars Count V. (ECF No. 13-1). They also argue, as a matter of fact, that Plaintiff never possessed the proper permits to perform demolition work.

## A. Counts I, II, and IV: Plaintiff's Section 1983 Claims

Plaintiff has filed suit against the City, Ms. Ferrufino, and Mr. Ukkundo'Oohwaka under 42 U.S.C. § 1983. Count I alleges that Ms. Ferrufino and Mr. Ukkundo'Oohwaka are liable in their individual capacities under § 1983 for violating Plaintiff's right to equal protection under the law. (Compl. ¶¶ 57-64). Count II lodges a claim against the City and Ms. Ferrufino and Mr. Ukkundo'Oohwaka in their official capacities, under § 1983, asserting violations of the Fifth Amendment's Takings Clause. (Compl. ¶¶ 65-73). Finally, Count IV alleges that Ms. Ferrufino and Mr. Ukkundo'Oohwaka are liable in their individual capacities under § 1983 for violating Plaintiff's substantive due process rights. (Compl. ¶¶ 83-88).

Under 42 U.S.C. § 1983, a plaintiff may file suit against an individual who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. A person acts

under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. V. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. 662, 676 (2009).

### 1.   Plaintiff's Equal Protection Claim

In Count I, Plaintiff alleges a § 1983 against Ms. Ferrufino and Mr. Ukkundo'Oohwaka based on a violation of the Fourteenth Amendment's Equal Protection Clause.   (Compl.  ¶¶ 57-64). Plaintiff asserts that Ms. Ferrufino and Mr. Ukkundo'Oohwaka, acting under color of state law, "arbitrarily singled out [Plaintiff] in the code enforcement process and deprived her of equal protection under the law."  (Compl. ¶ 59).  This equal protection claim presents a "class-of-one" theory, rather than one based on class-based discrimination.  (ECF No. 14, at 5-6). Specifically, Plaintiff alleges that she was treated differently than her neighbor, the holder of County Permit Number 8094-2023-00 ("County Permit 8094-2023-00").  (Compl. ¶ 60).  City Defendants contend that Plaintiff fails to allege facts sufficient to establish that she was treated differently than a similarly

13

situated permit holder as Permit 8094-2023-00 explicitly allows for "main floor non load bearing demolition," where Plaintiff's permit does not.  (ECF Nos. 13-1; 13-9).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1).  To succeed on a class-of-one theory, a party must allege that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff has not adequately alleged that she was treated differently from others who were similarly situated. Plaintiff's March 26, 2019 County permit lists the following work description as: "Addition: 40' X 8' 29' Second Story Addition." (ECF No. 1-3, at 2).  In contrast, County Permit 8094-2023-00 lists the work description as: "Main floor non load bearing demolition. Main floor renovation.  R&R windows, kitchen cabinets, flooring, new drywall, paint."  (ECF No. 13-9, at 1).  Plaintiff has not provided any factual allegations to support that she and the holder of Permit 8094-2023-00 or any other individual were similarly

14

situated and thus has failed to state a plausible claim of discrimination. Accordingly, the motion to dismiss will be granted as to Count I.

City Defendants argue, in the alternative, that even if Plaintiff pleaded a sufficiently similar comparator, she has not alleged acts that would fail the requisite level of scrutiny. (ECF No. 13-1, at 16).

Governmental action that does not burden a fundamental right or employ a suspect classification will not violate the Equal Protection Clause if government officials "reasonably could have believed that the action was rationally related to a legitimate governmental interest." *Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 290 (4th Cir. 1998). The question is whether "any state of facts reasonably may be conceived to justify" the actions of Ms. Ferrufino and Mr. Ukkundo'Oohwaka. *See McGowan v. Maryland*, 366 U.S. 420, 426 (1961).

Plaintiff alleges the actions of Ms. Ferrufino and Mr. Ukkundo'Oohwaka were "unreasonable under the circumstances," which "intentionally and maliciously" deprived Plaintiff of equal protection under the law. (Compl. ¶¶ 62-63). In response, City Defendants argue the demolition work was unpermitted and unsafe, as evidenced by the collapsed fourth wall, as the rationale for the issuance of the stop work order and subsequent infractions.

(ECF No. 13-1, at 16).  Plaintiff's conclusory statements, without factual allegations, are insufficient to overcome the presumption that Ms. Ferrufino and Mr. Ukkundo'Oohwaka's issuance of a stop work order or subsequent action was rational.

Accordingly, because Plaintiff asserts only a class-of-one equal protection claim and she has not overcome the deference afforded by rational basis review, the motion to dismiss will be granted, and as stated above, Count I will be dismissed as to Ms. Ferrufino and Mr. Ukkundo'Oohwaka.[6]

### 2.   Plaintiff's Fifth Amendment Takings Clause Claim

In Count II, Plaintiff asserts a § 1983 claim against the City (and Ms. Ferrufino and Mr. Ukkundo'Oohwaka in their official capacities[7]) for a violation of the Fifth Amendment,[8] based on

---

[6] Plaintiff refers to her Rule 56(d) affidavit asserting the need for discovery related to Count I.  City Defendants' motion is being construed as a 12(b)(6) motion to dismiss for failure to state a claim rather than one for summary judgment.  The "need for discovery to complete the factual basis for alleged claims is not an excuse to allege claims with no factual basis."  *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990).  Rule 11 requires a pre-filing factual investigation. A complaint containing factual allegations unsupported by any information obtained prior to filing violates this requirement.  Fed.R.Civ.P. 11(b)(3).

[7] Plaintiff agrees to dismiss the portion of Count II naming Ms. Ferrufino and Mr. Ukkundo'Oohwaka in their official capacity. (*See* ECF No. 14, at 7).

[8] Plaintiff asserts that she was deprived of her property without compensation in violation of her rights under the Fifth Amendment.  (Compl. ¶¶ 65-73).  The Takings Clause of the Fifth Amendment applies only to the conduct of federal actors, not state actors like the Defendants in this matter.  The Fifth Amendment is

*Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Compl. ¶¶ 65-73).  Plaintiff alleges that the City, through its agents, Ms. Ferrufino and Mr. Ukkundo'Oohwaka, and official policies or customs, deprived Plaintiff of the "beneficial use and economic value of her property" which constitutes an unconstitutional taking.  (Compl. ¶ 71).  Plaintiff alleges the City has "a practice of not reviewing permits approved and issued by DPIE prior to determining whether a homeowner is authorized to perform construction and/or demolition work on their property" and "a practice of not reviewing its own permits and the meeting minutes from its Design Review Board prior to determining whether a homeowner is violating local code enforcement regulations." (Compl. ¶ 68).  In response, City Defendants assert that: (1) Plaintiff has failed to state an unconstitutional policy, custom, or practice attributable to the City; (2) Plaintiff has failed to plead the alleged failure to check building permits prior to issuing a stop work order ever occurred; and (3) even assuming Ms. Ferrufino and Mr. Ukkundo'Oohwaka failed to check the issued permits, Plaintiff has "failed to identify an official policy or single additional instance of a stop work order being improperly issued."  (ECF No. 13-1, at 17-19).

---

made applicable to the States through the Fourteenth Amendment. *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163-64 (1998).

a.   **Plaintiff's** *Monell* **Claim**

A municipality is subject to suit under § 1983 based on the unconstitutional actions of individuals who were "executing an official policy or custom of the local government that violated the plaintiff's rights." *Little v. Mayor of Ocean City*, No. 18-cv-00360-ELH, 2019 WL 4689238, at *11 (D.Md. Sept. 26, 2019) (citing *Monell*, 436 U.S. at 690-91 (1978)). This court has previously explained *Monell* liability:

> Under *Monell*, "[l]iability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984). Policy or custom may be found in a number of ways, such as "in . . . 'persistent . . . practices of [municipal] officials having the de facto force of law.'" *Milligan*, 743 F.2d at 229. "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690-91. Policy or custom may also "be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees." *Milligan*, 743 F.2d at 229-30. Under narrow circumstances, policy may also be inferred "from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Id.* at 230. However, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id.*

*Lanford v. Prince George's Cnty.*, 199 F.Supp.2d 297, 304 (D.Md. 2002) (citations omitted).

Plaintiff attempts to allege municipal liability based on the City's official policies, practices, and customs. (Compl. ¶¶ 68-69). Specifically, Plaintiff alleges that the City has: (1) "a practice of not reviewing permits approved and issued by DPIE prior to determining whether a homeowner is authorized to perform construction . . . on their property;" and (2) "a policy or practice of refusing to lift Stop Work Orders . . . even when instructed to do so by [DPIE's] Building Plan Review Division." (Compl. ¶¶ 68-70). Plaintiff has alleged no facts, except those surrounding her own claim, to show that the City has a policy, practice, or custom of (1) not reviewing permits issued by DPIE or (2) refusing to lift stop work orders when instructed to do so by DPIE. These allegations alone are not sufficient to state a *Monell* claim. *See Boliek v. Frendlich*, No. 04-cv-03655-RDB, 2005 WL 1363980, at *6 (D.Md. June 7, 2005) (reasoning that "boilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient.") (quoting *Lanigan v. Vill. Of E. Hazel Crest*, 110 F.3d 467, 479 (7th Cir. 1997)). Additionally, Plaintiff fails to offer factual allegations of known, widespread conduct by City employees comparable to that allegedly committed by Ms. Ferrufino and Mr. Ukkundo'Oohwaka. *See Milligan*, 743 F.2d at 230. Even if Ms.

Ferrufino    and    Mr.    Ukkundo'Oohwaka    violated    Plaintiff's constitutional rights, these violations alone do not permit a proper inference of municipal liability because Plaintiff has not adequately plead a practice, policy, or custom exists. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 406 (1997).

Accordingly, the motion to dismiss Count II against the City will be granted.

### 3.   Plaintiff's Substantive Due Process Claim

In Count IV, Plaintiff asserts a substantive due process claim against Ms. Ferrufino and Mr. Ukkundo'Oohwaka in their individual capacities.    (Compl.  ¶¶ 83-88).    Plaintiff  alleges  that  Ms. Ferrufino and Mr. Ukkundo'Oohwaka deprived her of her property interest in the permits issued by DPIE and the City when they "refused to allow her perform the construction and demolition work within the scope of the issued permits." (Compl. ¶¶ 83-88).[9]  In response, City Defendants argue: (1) Plaintiff failed to plead a legitimate source of entitlement to the DPIE and City permits; (2) even if Plaintiff held a legitimate claim of entitlement to DPIE permits, Ms. Ferrufino and Mr. Ukkundo'Oohwaka do not have the power to revoke *County* permits; (3) the City permits did not allow demolition, and (4) Ms. Ferrufino and Mr. Ukkundo'Oohwaka's

---

[9] Confusingly, the complaint explicitly asserts that Plaintiff had a property interest in the DPIE permit, (Compl. ¶ 85), but then contends that she was deprived of a protected property interest by the refusal to allow her to perform work within the scope of the "issued permits." (Compl. ¶ 86).

actions were within the bounds of legitimate governmental action. (ECF No. 13-1, at 20-22).

Substantive due process is a far "narrower concept than procedural due process, for it serves as 'an absolute check on certain governmental actions notwithstanding the fairness of the procedures' used to implement those actions." *Heward v. Bd. Of Educ.*, 23-cv-00195-ELH, 2023 WL 6381498, at *49 (D.Md. Sept. 29, 2023) (quoting *Front Royal*, 135 F.3d 275, 278-88)). "Substantive due process protections 'run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post deprivation state remedies.'" (*Tri-Cnty. Paving*, *Inc. v. Ashe Cnty.*, 281 F.3d 430, 441 (4th Cir. 2002)).  To establish a violation of substantive due process, a plaintiff must "'demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.'" *MCL Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 282 (4th Cir. 2008) (quoting *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  [They] must have more

than a unilateral expectation of it.  [They] must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  Property owners obtain a vested right in a permit when they "(1) obtain a lawful building permit; (2) commence building in good faith; and (3) complete a substantial portion of construction." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 147 (4th Cir. 2018).

Here, Plaintiff has sufficiently alleged that she has a vested right to the permits because she (1) applied for and obtained the permits; (2) began construction in January of 2022 "in accordance with the issued permits"; and (3) completed demolition of three of the four exterior walls prior to the issuance of the stop work order.  (Compl. ¶¶ 13-18).  City Defendants' contention that the County and City Codes provide DPIE and the City the authority to grant, deny, suspend, or revoke permits could have merit if Plaintiff were seeking to establish a claim of entitlement or approval to an unissued permit, but here Plaintiff had *already* issued permits.  *See Gardner v. City of Baltimore Mayor*, 969 F.2d 63, 68 (4th Cir. 1992) ("Under [*Roth*'s claim of entitlement] approach, whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether . . . the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval.").

Plaintiff sufficiently pleads the second element of a substantive due process claim by alleging that Ms. Ferrufino and Mr. Ukkundo'Oohwaka deprived her of the City permit while "acting under color of state law." (Compl. ¶ 86). She does not, however, allege facts demonstrating that Ms. Ferrufino and Mr. Ukkundo'Oohwaka deprived her of the DPIE permits.

Plaintiff fails to plead the third element, sufficiently or explicitly. Even taking Plaintiff's allegations as true, Plaintiff has not alleged that the actions of Ms. Ferrufino and Mr. Ukkundo'Oohwaka were so arbitrary as to be incapable of avoidance by post deprivation state remedies. *See Tri-Cnty. Paving*, 281 F.3d at 440 ("[W]hether [defendants] violated state law in regulating land use is not determinative of whether [plaintiff's] substantive due process rights were violated. If state law is transgressed, state courts are open to redress that violation and remedy an unlawful deprivation of property.").

Accordingly, Plaintiff does not adequately plead a substantive due process violation and Count IV will be dismissed as to Ms. Ferrufino and Mr. Ukkundo'Oohwaka.

### 4.  Qualified Immunity

City Defendants generally contend that even if the conduct of Ms. Ferrufino or Mr. Ukkundo'Oohwaka were found to violate

Plaintiff's constitutional rights under Counts I, II[10], or IV, they are entitled to qualified immunity on each count.  (ECF No. 13-1, at 23-24).  It is not necessary to address this argument in light of the dismissal of those counts for failure to state a claim.

**B.   Counts III and V: State Law Claims**

**1.   Plaintiff's Claims Under Article 24 of the Maryland Declaration of Rights and Article III**

Count III of the complaint alleges violations of Plaintiff's rights under the Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Maryland Constitution against Ms. Ferrufino and Mr. Ukkundo'Oohwaka in their individual capacities. (Compl. ¶¶ 74-82).

Plaintiff alleges that Ms. Ferrufino directed the City Code Compliance Enforcement Division to adopt "enforcement policies and customs that went too far by depriving [Plaintiff] of the beneficial and economic value of her property without compensation. (Compl. ¶ 77).  Plaintiff alleges that Ms. Ferrufino knew or should have known that the policies she "developed and/or sanctioned were being enforced . . . in a manner that reflected a deliberate indifference to the risk" of constitutional violations. (Compl. ¶ 79).  Plaintiff also alleges that Mr. Ukkundo'Oohwaka,

---

[10] Count II is only against the City at present, because Plaintiff agrees to dismiss the official capacity claims against Ms. Ferrufino and Mr. Ukkundo'Oohwaka.  Qualified immunity does not apply to official capacity suits, in any event. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (citation omitted).

"through [his] . . . actions," violated her rights under the
Maryland Declaration of Rights and the Maryland Constitution, and
that he did so with a "deliberate indifference to the risk that a
constitutional violation would occur." (Compl. ¶¶ 80-81).   City
Defendants argue that Plaintiff has failed to identify a specific
policy or custom that led to a deprivation or rights and failed to
identify how any unconstitutional policy or custom would be
attributed to Ms. Ferrufino.   (ECF No. 13-1, at 25).   City
Defendants further argue that Plaintiff's assertion that Ms.
Ferrufino and Mr. Ukkundo'Oohwaka deprived her of all "beneficial
use and economic value of her property" is a "misstatement of
fact." (ECF No. 13-1, at 25).[11]

Article III, Section 40 of the Maryland Constitution contains
a provision that parallels the Fifth Amendment Takings Clause of
the United States Constitution and is interpreted *in pari materia*
with the federal provision.   Maryland Const., Art. III, Sec. 40;
*Litz v. Md. Dep't of Env't*, 446 Md. 254, 265-66 (2016).

Article 24 of the Maryland Declaration of Rights is analogous
to the Fourteenth Amendment and protects an individual's interest
in both substantive and procedural due process.   *See Off. of
People's Couns. v. Md. Pub. Serv. Comm'n*, 355 Md. 1, 25-27 (1999)
(discussing substantive due process); *Roberts v. Total Health*

---

[11] Any factual dispute between the parties is irrelevant at
this stage of the litigation.

*Care, Inc.*, 349 Md. 499, 508-09 (1988) (discussing procedural due process).  Article 24 has been interpreted to have "the exact same meaning an effect" as Article III, Section 40 as it relates to an exaction of property.  *Student "C" v. Anne Arundel Cnty. Cmty. Coll.*, 513 F.Supp. 658, 667 (D.Md. 2021) (quoting *Bureau of Mines of Md. v. George's Creek Coal Land Co.*, 272 Md. 143, 156 (1974)).

Although in some instances, a claim under Article III and Article 24 requires a separate analysis, one is not necessary here because Plaintiff's Article III claim fails for one of the same reasons as her takings claim in Count II.  Plaintiff provides no factual support for her allegations of a policy or practice implemented by Ms. Ferrufino and carried out by Mr. Ukkundo'Oohwaka that deprived her of her rights.  The motion to dismiss Count III against Ms. Ferrufino and Mr. Ukkundo'Oohwaka will be granted.

### 2.  **Plaintiff's Negligence Claim**

Count V is brought against Ms. Ferrufino and Mr. Ukkundo'Oohwaka in their individual capacities.  Plaintiff alleges that Ms. Ferrufino and Mr. Ukkundo'Oohwaka were negligent in the performance of "their code enforcement activities" with respect to Plaintiff and the Property.  (Compl. ¶ 90).  Specifically, Plaintiff alleges that Ms. Ferrufino and Mr. Ukkundo'Oohwaka had a duty to engage with her in a "lawful manner" and that Ms. Ferrufino and Mr. Ukkundo'Oohwaka breached that duty "through the issuance of unreasonable orders and baseless citations."  (Compl.

¶¶ 90-91).   In response, City Defendants do not challenge Plaintiff's allegation of negligence, rather they assert that Ms. Ferrufino and Mr. Ukkundo'Oohwaka are entitled to public official immunity under Maryland law.  (ECF No. 13-1, at 26-28).

### a.  Public Official Immunity

Common law public official immunity applies to "public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties." *Houghton v. Forrest*, 412 Md. 578, 585 (2010).

The Supreme Court of Maryland explained: "The term discretion denotes freedom to act according to one's judgment in the absence of a hard and fast rule.  When applied to public officials, discretion is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience and uncontrolled by the judgment or conscience of others." *Livesay v. Balt. Cnty.*, 384 Md. 1, 16 (2004).

The City Code makes clear that an individual acting as a building inspector "may" suspend or revoke a City building permit, and that a building inspector "may issue a stop work order or other notice of violation."  Mt. Rainier, Md., Code §§ 3-114 (B), 3-103(E) (2024).  Courts generally interpret "may" as permissive, in contrast with "shall," which is interpreted as mandatory. *See Bd.*

*Of Physician Quality v. Mullan*, 381 Md. 157, 166 (2004); *State v. Green*, 367 Md. 61, 82 (2001).  The plain language of the City Code establishes that the duties performed by Ms. Ferrufino and Mr. Ukkundo'Oohwaka were discretionary as opposed to ministerial in nature.  *See Livesay*, 384 Md. at 16 (finding that an Operations Manual's use of "may" as opposed to "shall" gave officers discretion to select the appropriate response based on the circumstances).  Thus, because the City Code authorizes Ms. Ferrufino and Mr. Ukkundo'Oohwaka to use discretion in carrying out their official duties, their actions were discretionary in nature, not ministerial.  Accordingly, Ms. Ferrufino and Mr. Ukkundo'Oohwaka are entitled to public official immunity.

    **b.   Malice Exception**

Plaintiff further asserts that Ms. Ferrufino and Mr. Ukkundo'Oohwaka acted in a "malicious or wanton manner in the actions they took against" Plaintiff and the Property.  (Compl. ¶ 92).  Public official immunity is not afforded for any alleged intentional torts or acts committed with actual malice.[12]  *Ashton*

_____

[12] An allegation of gross negligence can also defeat public official immunity.  *See Cooper v. Rodriguez*, 443 Md. 680, 723 (2015) ("[I]f a public official's actions are grossly negligent, the public official is not entitled to common law public official immunity.").  Plaintiff attempts to allege gross negligence on the part of Ms. Ferrufino and Mr. Ukkundo'Oohwaka in her opposition.  (ECF No. 14, at 14).  That allegation, though not relevant here as it was not alleged in the complaint, fails for the same reasoning as Plaintiff's "malice" allegation does-Plaintiff's failure to allege facts that support her allegation of gross negligence.  *See Elliot*, 58 Md.App. at 528.

*v. Brown*, 339 Md. 70, 118 (1995).  The mere assertion of malice, however, is not sufficient to overcome public official immunity, rather the Plaintiff must "allege with some clarity and precision those facts which make the act malicious." *Elliot v. Kupferman*¸58 Md.App. 510, 528 (1984).

"Actual malice is established by proof that the officials intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff. *Owen-Williams v. City of Gaithersburg*, No. 10-cv-185-PJM, 2011 WL 53082, at *5 (D.Md. Jan. 7, 2011).

Plaintiff's complaint does not adequately state that Ms. Ferrufino or Mr. Ukkundo'Oohwaka acted with ill will, improper motive, or without legal justification or excuse.  Instead, the complaint only broadly alleges that Ms. Ferrufino and Mr. Ukkundo'Oohwaka "acted in a malicious or wanton manner in the actions they took against [Plaintiff] and the . . . Property" and that Ms. Ferrufino and Mr. Ukkundo'Oohwaka's actions "lack any justification or basis under the law." (Compl. ¶ 92).  Plaintiff has not "allege[d] with some clarity and precision" any facts that make the actions of Ms. Ferrufino and Mr. Ukkundo'Oohwaka malicious.  *See Elliot*, 58 Md.App. at 528.

Therefore, Ms. Ferrufino and Mr. Ukkundo'Oohwaka are entitled to public official immunity and the motion to dismiss Count V, as to Ms. Ferrufino and Mr. Ukkundo'Oohwaka, will be granted.

## IV.  Conclusion

For the foregoing reasons, City Defendants' motion, treated solely as a motion to dismiss, will be granted.  While it is not clear that Plaintiff can remedy any of the defects identified in this Opinion, and she has not asked for leave to amend the complaint, she will be provided an opportunity to do so.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
